UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICARDO R. SIMMONS, JR,

               Plaintiff,

-against-

NYS DEPT OF SOCIAL SERVICES; NYS
DEPT OF CHILD SUPPORT SERVICES;
ROCKLAND COUNTY CHILD SUPPORT
SERVICES/DSS; ONADAGA COUNTY
CHILD SUPPORT SERVICES/DSS,

               Defendants.

19-CV-3633 (CM)

ORDER OF DISMISSAL

COLLEEN McMAHON, Chief United States District Judge:

Plaintiff, who is proceeding *pro se* and *in forma pauperis*, filed this complaint alleging that Defendants violated his rights. By order dated May 3, 2019, the Court directed Plaintiff to amend his complaint to address deficiencies in his original pleading. Plaintiff then filed a motion seeking to "suspend action" by the New York State Department of Social Services in connection with his past-due child support and "restore his rights." The Court notified Plaintiff that, unless he filed an amended complaint as directed, the Court would construe his motion as an amended complaint. Plaintiff filed nothing further, and the Court therefore construes his motion (ECF No. 6) as the operative amended complaint. For the reasons set forth below, the Court dismisses the amended complaint.

**STANDARD OF REVIEW**

The Court must dismiss an *in forma pauperis* complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also

dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotations and citations omitted) (emphasis in original).

## BACKGROUND

Plaintiff Ricardo Simmons includes the following facts in his amended complaint. In 1989, the Rockland County Department of Social Services (DSS) "summoned" Simmons to the Rockland County Courthouse. Simmons appeared before Judge Jane Doe, and Jane Doe Public Defender represented Plaintiff. Simmons was taken to a room and told that he "had to sign several papers about a child born to . . . Sherri Bookwalter." (Am. Compl., ECF No. 6, at 22.) Plaintiff asked what papers he was signing and was told that it was the "child's birth certificate and other papers pertaining to his health." (*Id.*) Plaintiff asked, "Is that all?" and the Public Defender told him that it was. Plaintiff seems to argue that he did not consent to pay child support: "Who in the[i]r right mind would knowingly enter into something that would ruin their credit[,] their ability [to] gain employment and their ability to get housing not t[o] mention being incarcerated." (*Id.* at 23.)

 Several months later, Plaintiff was notified that he was required to appear in the Family Court and "was told [that he] was in violation of a court order" for child support. Plaintiff indicated that he was unaware of any child support order and was told that he "had signed papers with DSS that said [he] would pay child support." (*Id.* at 22.) Plaintiff asked to see the papers that he had allegedly signed but never received a copy. One week later, on an unspecified date in 1989 or 1990, Plaintiff "was arrested and sent to jail" for nonpayment of child support. Plaintiff

"challenged the validity of the order," but he does not plead any facts about the outcome of that challenge. (*Id.*)

Plaintiff was "then handed a notice that [he] was being brought to court for a child [L.R.] again having no knowledge of the child or that his mother had filed for" income support. "[I]n a few instances, Plaintiff was picked up in the streets on . . . bogus warrants issued by judge[s] Jane Doe and John Doe, locked up and then brought to court never being told why a warrant was issued for me but then let go." (*Id.*) After being incarcerated, Plaintiff was "brought before the judge . . . and told that [he] had to make a payment agreement or [he] wouldn't be released." (*Id.*) Plaintiff's court-appointed counsel told him that he "ha[d] to agree." (*Id.*)

Plaintiff contends that he had a recorded conversation with a judge in Onondaga County, and he "sent in several modifications stating that [his] son was currently incarcerated and [he] has the documents to prove" it. (*Id.*)

Plaintiff includes a document from the Onondaga Family Court stating that as of June 2, 2017, he owed child support arrears of $4,483.83, in connection with court orders entered on February 24, 2006. (*Id.* at 5.) The 2017 notice states that unless Plaintiff pays that amount or takes appropriate action to challenge the arrears within 45 days, the Onondaga County Child Support Enforcement Unit (CSEU) will notify the New York State Department of Motor Vehicles (DMV) to suspend his driving privileges. (*Id.* at 5.) Plaintiff also attaches a notice dated June 13, 2017, from the County of Onondaga DSS that states:

> I am in receipt of your challenge to DMV, in which you claim charges are fraudulent. Your Rockland County Order Dated 12/16/97 was transferred here in 2005 as mother & child moved to Onondaga County. At the time of the transfer current care was metering at $20 weekly per Rockland County $4120 was due to Dept of Social Services & $420 was due to Petitioner/ Diane. There were three modification petitions requested in 2005, 2006 & 2007. All dismissed for failure to appear. The order continued to meter at $20 weekly til child: Lloyd was emancipated on 8/30/2009. (21st birthday) You claim you are demanding a court

date. You must file a petition on Onondaga County Family Court in order to have your day in court. Their #315/671-2000. You will need a petition, co[p]y of the order & teleconference o[r]ders to testify via telephone . . . The sy[s]tem shows . . . tota[l] due was $9325.00 of which $4868.17 was received through 4/9/13. The remain[ing] arrears balance is: $4483.83 . . . .

(*Id.* at 4.) Plaintiff filed a Family Court petition on June 22, 2017, seeking "modification of arrears and modification of order of support." (*Id.* at 7.) By order dated July 27, 2017, the Onondaga Family Court dismissed the petition without prejudice to Plaintiff's refiling it, stating that "after examination and inquiry into the facts and circumstances of the case . . . the petition is dismissed due to failure to state cause of action (petition is insufficient on its face). (*Id.*) The order further indicates that objections may be filed within 30 days. (*Id.*)

Plaintiff also attaches a more recent "child support bill as of 3/29/2019" stating that the past due balance was $4483.83 and listing a credit for $693.92, for a "new past due balance: $3.789.91." (*Id.* at 13.)

On an unspecified date, DSS "took $100.00" from Plaintiff's account at Chase Bank, and he seeks damages for this "double dipping." (*Id.* at 22.) Plaintiff also seeks to have information about child support arrears "cleared immediately" from his "credit history." (*Id.*)

Plaintiff asks "the court to suspend action by DSS further" and wants all of his "rights restored." (*Id.* at 1.) Plaintiff requests $100,000 in damages for Defendants' having taken "monies from [his] account, *i.e.*, double dipping and never returning it." (*Id.*) In his amended complaint, Plaintiff names the New York State DSS; the Rockland County CSEU, and the Onondaga County DSS.

## DISCUSSION

### A. No Jurisdiction to Review State Court Orders

Federal district courts lack authority to review state court orders. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005) (noting that "28 U.S.C. § 1331 is a grant

of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments."); *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007) (district courts are not authorized "to exercise appellate jurisdiction over state-court judgments").

 "[I]n some circumstances, federal suits that purport to complain of injury by individuals in reality complain of injury by state-court judgments." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F. 3d 77, 85 (2d Cir. 2005). Federal review of claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by the state court judgment"; (3) "the plaintiff must invite district court review and judgment of the state court judgment"; and (4) "the state court judgment must have been rendered before the district court proceedings commenced." *Id*. at 83-92 (relying on *Exxon Mobil Corp.*, 544 U.S. at 284).

### 1. Paternity

Under New York law, an Acknowledgment of Paternity "shall establish the paternity of a child and have the same force and effect as an order of paternity or filiation issued by a court of competent jurisdiction." Public Health Law § 4135–a(3)(a); Family Court Act § 516–a(a)); *see also Emily R. v. Emilio R.*, 53 Misc. 3d 325, 331-32 (N.Y. Fam. Ct. 2016) (describing limited options under New York law to challenge or rescind an Acknowledgment of Paternity, FCA § 516–a(b)(iv)).

Here, the acknowledgments of paternity establishing that Plaintiff is the father of these children became final decades before Plaintiff brought this action; thus, judgments adverse to Plaintiff were entered before this action was filed, and the first and fourth *Rooker-Feldman* requirements are satisfied. Because Plaintiff challenges the validity of the paternity orders, this claim complains of injuries caused by state court judgments. Although Plaintiff argues that he did not intend to consent to payment of child support (rather than arguing that he is not the father of

the children, at least one of whom he refers to as "my son"), the "injury" of paying child support follows from the determination that Plaintiff is the legal father of the children. Plaintiff's claim, attempting to "restore his rights" not to pay child support arrears and "suspend enforcement" on the ground that he did not "knowingly enter into" a paternity order, thus invites "district court review and judgment of the state court judgment" regarding paternity. *Hoblock*, 422 F. 3d at 85.

This Court lacks jurisdiction to review and overturn state court decisions, including the acknowledgment of paternity that is the basis for imposing child support, and the Court must therefore dismiss Plaintiff's challenge to the validity of the paternity order.

### 2. Challenge to Child Support Arrears

To the extent that Plaintiff asks this Court to reconsider the Family Court's determination that he owes child support arrears, the *Rooker-Feldman* doctrine also bars such a claim. Plaintiff's arguments are not entirely clear, but he appears to reassert in this complaint the arguments that he made to the Family Court – that child support should not have accrued during periods when his son was incarcerated, and that the amount owed was "fraudulent" or incorrectly determined when the child moved from Rockland to Onondaga County. Plaintiff also submits documents, some dating back to 1997, which state that various warrants were vacated and canceled (without affecting the underlying child support orders), and he may be seeking to show that certain amounts were not properly credited.

Plaintiff attaches a Family Court order dated July 27, 2017, rejecting his motion to modify arrears and the order of support on the ground that the "petition is insufficient on its face."[1] Because orders of the Family Court have determined the amount of Plaintiff's child

---

[1] Nothing in the July 27, 2017 Family Court order, which dismissed Plaintiff's claim seeking to modify arrears owed "without prejudice," appears to prevent him from filing a new petition in the Family Court to modify the arrears, in which he can attempt to show that he had good cause for failing to apply for relief prior to accrual of the arrears. *See* N.Y. Family Court

support arrears, and this Court lacks jurisdiction to review such orders, the Court must dismiss Plaintiff's challenges to the calculation of the arrears that he owes. The Court cannot entertain Plaintiff's request that it "suspend action by DSS," insofar as this would require that the Court review and overturn the Family Court decisions that Plaintiff owes child support arrears. [2]

## B.     Levying to Collect Child Support Arrears

Plaintiff attaches an Income Withholding Order dated March 25, 2019, which directs the Social Security Administration to deduct $36.00 weekly for past-due child support.[3] Plaintiff contends that on an unspecified date, $100.00 was withdrawn from his account at Chase Bank. He states that he is "seeking monetary judgment against the DSS for double dipping into my [C]hase acct where they took $100.00 And not returning it and I want it and compounding a daily interest at 60%." (Am. Compl. at 22.) The *Rooker-Feldman* doctrine does not prevent the Court

---

Act § 451 ("[T]he court shall not reduce or annul any other arrears unless the defaulting party shows good cause for failure to make application for relief from the judgment or order directing payment prior to the accrual of the arrears.").

[2] "[W]here a federal court is asked to grant a divorce or annulment, determine support payments, or award custody of a child," courts have applied a domestic relations exception to diversity jurisdiction. *See Deem v. Deem* No. 18-2266, _F.3d_, 2019 WL 5581584, at *2 (2d Cir. Oct. 30, 2019) (citing *Barber v. Barber*, 62 U.S. (21 How.) 582, 584 (1859)). "Although the domestic relations 'exception' to subject matter jurisdiction recognized by the Supreme Court in *Ankenbrandt v. Richards*, 504 U.S. 689 (1992), does not apply in federal-question cases, the domestic relations abstention doctrine articulated in *American Airlines* [*Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990)] does." *Id.* at *2. Thus, even if *Rooker-Feldman* did not bar Plaintiff's claim asking this Court to review a support order that the Family Court issued, calculation of support payments is the type of domestic relations issue that the Court generally abstains from hearing.

[3] In the Court's order granting Plaintiff leave to amend, the Court noted that because Social Security Disability Insurance program (SSDI) benefits, unlike Supplemental Security Income (SSI) benefits, are "based upon remuneration for employment," 42 U.S.C. § 659(h)(1)(A)(ii)(I), such benefits are not categorically exempt from garnishment. *Sykes v. Bank of America*, 723 F.3d 399, 404 (2d Cir. 2013) (holding that because SSI benefits are not monies received in remuneration for employment, SSI benefits are not attachable). In the amended complaint, Plaintiff does not argue that his SSDI benefits are not attachable.

from reaching this challenge because enforcement is "wholly separate from the validity of the underlying [child support] order." *Sykes v. Bank of America*, 723 F.3d 399, 404 (2d Cir. 2013).

Plaintiff's allegations that Defendant DSS took more money in a single withdrawal than the Family Court Income Withholding Order authorized can be construed as a claim that he was deprived of his property without due process. The two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a property (or liberty) interest protected by the United States Constitution or federal statutes and, if so, what process was due before plaintiff could be deprived of that interest." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995) (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982)).

"[I]n situations where the State feasibly can provide a predeprivation hearing before taking property, it must do so regardless of the adequacy of the postdeprivation remedy." *Zinermon v. Burch*, 494 U.S. 113, 132 (1990)); *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 467 (2d Cir. 2006) ("[W]hen the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing"). But when a plaintiff brings a procedural due process claim based on random unauthorized acts by state employees, a post-deprivation hearing is the only form of due process that can be made available because the state could not have predicted that the deprivation would occur. *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 880 (1996).

Nothing in Plaintiff's amended complaint suggests that excess money for child support arrears was taken pursuant to an established DSS policy. It therefore appears that Plaintiff is asserting a claim for a random, unauthorized taking of his money. In this context, no due process claim will lie where a post-deprivation process is available to the plaintiff in the state court.

Plaintiff has a remedy in the state court for an overcharge in the enforcement of his child support arrears. As such, he cannot state a claim under § 1983 for a denial of his right to procedural due process based on the alleged overcharge in collecting child support. The Court therefore dismisses Plaintiff's procedural due process claim premised on the withdrawal of $100.00, for failure to state a claim on which relief can be granted.

**C.      Suspension of Driver's License**

Plaintiff's claim that his driver's license was unlawfully suspended could also be construed as a potential procedural due process claim. New York law has an established procedure for notifying a child support debtor before suspending his driver's license and providing an opportunity for him to be heard. When child support arrears total four months or more of support payments, the Support Collection Unit "shall notify the support obligor in writing that his . . . continued failure to pay the support arrears shall result in notification to the department of motor vehicles to suspend the support obligor's driving privileges. . . ." N.Y. Soc. Serv. Law § 11-b(12)(b)(1).[4] "A support obligor who has received such a notice may avoid the suspension" by (1) making full payment of all past due support; (2) making satisfactory payment arrangements for current and past due support, or (3) documenting that he is receiving public assistance or supplemental security income, or that his income falls below the self-support reserve. N.Y. Soc. Serv. Law § 111-b(12)(e).

---

[4] The Support Collection Unit must provide the notice "by first class mail to the support obligor's last known address or such other place where the support obligor is likely to receive notice, or in the same manner as a summons may be served. Forty-five days after the date of such notice, if the support obligor has not challenged the determination of the support collection unit . . . or if the support obligor has failed to satisfy the arrears/past due support . . ., the department shall notify the department of motor vehicles that the support obligor's driving privileges are to be suspended " N.Y. Soc. Serv. Law § 111-b.

If an obligor whose driving privileges were suspended did not actually receive the required notice, he "may at any time request a review" from the Support Collection Unit. If the Support Collection Unit determines that the obligor either "has not accumulated" four months of support arrears, or that he meets any of the requirements in N.Y. Soc. Serv. Law § 111-b(12)(e) for avoiding suspension (such as making a payment arrangement or demonstrating income below certain levels), then the Support Collection Unit shall notify the DMV that the suspension of driving privileges shall be terminated. *See* N.Y. Soc. Serv. Law § 111-b(12)(f).

New York's established procedures thus provide for predeprivation notice and an opportunity to be heard before suspension of a driver's license. If, as a result of random and unauthorized action, a child support obligor does not receive the required notice, New York law also provides an opportunity for review and termination of the suspension if the obligor makes the required showing. N.Y. Soc. Serv. Law § 111-b(12)(f).

Plaintiff attaches to the amended complaint a copy of the notice that his driver's license would be suspended because of child support arrears and documents showing that he then filed a petition in the Family Court to modify the child support arrears. The Family Court concluded, however, that Plaintiff's petition was inadequate on its face and denied it. These allegations do not state a claim that Plaintiff was deprived of his driver's license without predeprivation notice and an opportunity to be heard, even though Plaintiff did not prevail in the Family Court.

Moreover, courts in this Circuit have repeatedly rejected substantive due process challenges based on the denial of a driver's license or revocation of a passport to an individual who owes child support arrears. *See, e.g., Collins v. Saratoga Cnty. Support Collection Unit*, No. 12-CV-494, 2012 WL 2571288, at *5 (N.D.N.Y. July 3, 2012) (holding that temporary suspension of the plaintiff's driver's license in connection with child support arrears, even if

erroneous, did not violate his substantive due process rights), *aff'd*, 528 F. App'x 15 (2d Cir. 2013); *Weinstein v. Albright*, 2000 WL 1154310, at *5 (S.D.N.Y. 2000) (rejecting substantive due process challenge to federal law authorizing the denial or revocation of a passport to an individual who owes child support arrears exceeding $ 5,000), *aff'd*, 261 F.3d 127, 142-43 (2d. Cir. 2001). The Court therefore dismisses Plaintiff's Fourteenth Amendment claims in connection with suspension of his driver's license for failure to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

**D.     Fair Credit Reporting Act**

Federal law, in Title IV, Part D, of the Social Security Act, requires each state to have a law allowing past due child support to be reported to consumer reporting agencies. Under New York law, each social services district shall "report periodically to consumer reporting agencies (as defined in section 603(f) of the Fair Credit Reporting Act (15 U.S.C. § 1681a(f)) information regarding past-due support owed by the parent owing support." N.Y. Soc. Serv. Law § 111-c. Child support debtors are notified before child support arrears are reported. *See* N.Y. Soc. Serv. Law § 111-c ("A social services official, at least ten days prior to making the information available to a consumer reporting agency, must provide notice to the parent who owes the support informing such parent of the proposed release of the information to the consumer reporting agency and informing such parent of the opportunity to be heard and the methods available for contesting the accuracy of the information.").

Plaintiff's allegations that Defendants violated his rights by reporting his child support arrears to credit bureaus could be construed as attempting to assert a claim under the Fair Credit Reporting Act (FCRA). Defendants have reported Plaintiff's child support arrears as required under N.Y. Soc. Serv. Law § 111-c. Plaintiff requests removal of this information from his credit report, apparently because he objects to the determination that he owes past due child support.

*See, e.g., Gottlieb v. City of New York*, 129 A.D.3d 724, 726 (N.Y. App. Div. 2015) (dismissing claims where "[t]he substance of the cause of action alleging a violation of the Fair Credit Reporting Act was, in essence, a challenge to the determination by the OCSE that the petitioner's account was in arrears, which authorized the OCSE, pursuant to Social Services Law §§ 111–b, 111–c, and 111–t, to take enforcement action and report his arrears to the credit reporting agencies"). As set forth previously, a parent can seek relief in the state court to modify child support arrears. N.Y. Family Court Act § 451. Plaintiff's efforts to modify the arrears have so far been rejected, and there is no basis for concluding that Defendants' reporting of the amount of child support arrears is unlawful. Plaintiff's allegations that Defendants reported his child support arrears thus fail to state a claim under the FCRA, and the Court must reject his request that it order Defendants to have it immediately removed from his credit reports.

District courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its defects, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend and has failed to cure the complaint's deficiencies. *See Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's amended complaint cannot be cured with a further amendment, the Court declines to grant Plaintiff another opportunity to amend.

## CONCLUSION

The Clerk of Court is directed to assign this matter to my docket, mail a copy of this order to Plaintiff, and note service on the docket. Plaintiff's amended complaint, filed *in forma pauperis* under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The Court declines, under 28 U.S.C. § 1367(c)(3) to exercise supplemental jurisdiction over any state law claims that Plaintiff is asserting.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to docket this as a "written opinion" within the meaning of Section 205(a)(5) of the E-Government Act of 2002.

SO ORDERED.

Dated:    November 4, 2019
            New York, New York

_____
COLLEEN McMAHON
Chief United States District Judge